UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Innovative Computer Professionals, Inc., *a Minnesota corporation doing business as* Digital Cash Processing,<br><br>              Plaintiff,<br><br>v.<br><br>Outdoors Online, LLC, *doing business as* GunBroker.com,<br><br>              Defendant. | Civil No. 24-373 (DWF/DTS)<br><br>**MEMORANDUM OPINION AND ORDER** |

_____

Andrew H. Bardwell, Esq., Samuel Maddox Johnson, Esq., William R. Skolnick, Esq., Skolnick & Bardwell, P.A.; Sean A. Shiff, Esq., Sean A. Shiff, PLLC, counsel for Plaintiff.

Anne L. Melton, Esq., Samuel Blatnick, Esq., Lucosky Brookman LLP; Bryant D. Tchida, Esq., Madeline E. Davis, Esq., Moss & Barnett, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on Defendant Outdoors Online, LLC, doing business as GunBroker.com's ("GunBroker.com") motion to dismiss. (Doc. No. 22.) Plaintiff Innovative Computer Professionals, Inc., doing business as Digital Cash Processing ("DCP") opposes the motion. (Doc. No. 28.) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

DCP and GunBroker.com entered into a contract, and a subsequent amended contract, that provided, among other things, that DCP would be the "exclusive provider"

of payment processing services for GunBroker.com.[1]  (Doc. No. 20 ("Am. Compl.") ¶ 4; Doc. No. 1-2 ("First Agreement") at 2; Doc. No. 1-3 ("Am. Agreement") at 2.)

DCP alleges that GunBroker.com breached the contract by "moving all of [GunBroker.com]'s customers off the platform DCP created for [GunBroker.com] and refusing to allow [DCP] to perform the services under the contract."  (Am. Compl. ¶ 9.) DCP alleges that GunBroker.com selected a third party to replace DCP "in violation of the exclusivity provision in the contract" and has refused to pay DCP fees owed under the agreement.  (*Id.* ¶¶ 11-12.)  DCP further alleges that GunBroker.com anticipatorily breached the contract by "express[ing] its unqualified repudiation of the parties' contract and its refusal to perform its obligations under the same" and breached its duty of good faith and fair dealing.  (*Id.* ¶¶ 15, 22-29.)

DCP filed this action in state court, and GunBroker.com removed the case to federal court.  (Doc. No. 1.)  DCP amended its Complaint (Am. Compl.) and GunBroker.com now moves to dismiss the case for lack of jurisdiction and failure to state a claim, or, alternatively, to transfer the case to the District of Arizona.

## DISCUSSION

GunBroker.com moves to dismiss the Amended Complaint, arguing that (1) the Court lacks personal jurisdiction over GunBroker.com; and (2) DCP has failed to

---

[1]  The two agreements were not attached to the Complaint, but GunBroker.com provided the agreements with its notice of removal.  The Court will consider the agreements as the agreements are embraced by the Complaint.  *See Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.").

adequately plead any claim against GunBroker.com. The Court addresses each argument in turn.

I.  **Personal Jurisdiction**

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). In diversity jurisdiction cases, personal jurisdiction exists "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Id.* at 592 (internal quotations and citation omitted). Minnesota's long-arm statute extends personal jurisdiction as far as the Due Process Clause allows. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (1992). "Due Process requires that the defendant purposefully establish minimum contacts in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend traditional conceptions of fair play and substantial justice." *K-V Pharm. Co.*, 648 F.3d at 592 (internal quotations and citation omitted). "For contractual claims, personal jurisdiction is proper where the defendant reaches out beyond one state and creates continuing relationships and obligations with citizens of another state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015) (internal quotations and citation omitted).

To determine whether minimum contacts exist for personal jurisdiction, the Court must consider five factors: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and

(5) the convenience or inconvenience to the parties." *K-V Pharm. Co.*, 648 F.3d at 592 (internal quotations and citation omitted). The first three factors are "primary factors," but the Court considers "all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *Id.* at 592-93. And the "third factor distinguishes whether the jurisdiction is specific or general."[2] *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 n.4 (8th Cir. 1996).

GunBroker.com entered into an original and amended contract with DCP, a Minnesota corporation, under which DCP agreed to provide payment processing services to GunBroker.com. "A defendant's solicitation of a business relationship with a company incorporated in the forum State that takes place within that State is a relevant contact in determining whether its courts may exercise personal jurisdiction." *Creative Calling Sols., Inc*, 799 F.3d at 980. Around fifty percent of the services provided under the contract were performed by DCP employees or independent contractors in Minnesota.[3] (Doc. No. 29 ("Beer Aff.") ¶ 6.) GunBroker.com met with DCP in Minnesota one or two times to discuss DCP's obligations under the contract, and GunBroker.com sent and received thousands of emails to and from DCP in Minnesota. (*Id.* ¶¶ 4-5.) The contract also contains a choice-of-law provision, requiring it to be

---

[2] The Court focuses on specific jurisdiction, rather than general jurisdiction, because GunBroker.com's alleged contact with Minnesota relates to the facts underlying this action.

[3] GunBroker.com asserts that DCP "delegated or contracted out much of the work it was supposed to perform under the agreement." (Doc. No. 33 ("Second Smith Decl.") ¶ 10.) DCP concedes that some work was outsourced but maintains that over fifty percent of the work was performed in Minnesota. (Beer Aff. ¶ 6.)

interpreted under Minnesota law.  (First Agreement at 9; Am. Agreement at 11.)  Moreover, GunBroker.com facilitates the purchase and sale of firearms within Minnesota.[4]  (Second Smith Decl. ¶ 6.)

The terms of the contract also contemplate future contact with Minnesota.  The contract provides for monthly payments to DCP in Minnesota over the contract term of ten years.  (Am. Agreement at 2-3, 16-17.)  The monthly payment includes fees for processing payment transactions.  (*Id.*)  As noted above, GunBroker.com facilitates gun sales in Minnesota and thus, under the contract, DCP would obtain fees from those sales, as well as for sales made in other states.

Based on the amount of contact that GunBroker.com has had within Minnesota, the Court concludes that GunBroker.com could have reasonably expected to be haled into court in Minnesota in the event of a breach of the contract.

The choice-of-law provision further supports jurisdiction.  The contract contains a provision that states that the contract "shall be interpreted, construed and enforced in all respects in accordance with the laws of the State of Minnesota without reference to its choice of law rules." (First Agreement at 9; Am. Agreement at 11.)  "Although choice-of-law provisions specifying that the forum state's laws govern are insufficient on their

---

[4]  GunBroker.com asserts that the sale of firearms to and from Minnesota represents a small number of GunBroker.com's total sales—around 1.54% and 4.27% respectively. (Second Smith Decl. ¶ 6.)  The Amended Complaint alleges that GunBroker.com's total sales per year amounts to nearly one billion dollars (Am. Compl. ¶ 6), which suggests that GunBroker.com facilitates millions of dollars of sales in and out of Minnesota every year.  But because GunBroker.com does not appear to target Minnesota specifically, the Court affords little weight to this contact.

own to confer personal jurisdiction, they provide further evidence of a defendant's 'deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'" *K-V Pharm. Co.*, 648 F.3d at 594 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)). As GunBroker.com notes, it does not appear that the parties specifically negotiated the choice-of-law provision, and thus the Court will afford less weight to the provision. Even so, the Court finds the existence of the provision in the original and amended contracts to favor personal jurisdiction.[5]

As for the third factor, the majority of GunBroker.com's contact with Minnesota relates to the formation and execution of the contract. Future contact is also laid out in the contract, specifically the terms providing for monthly payments to DCP and DCP's continued development and maintenance of its software services, fifty percent of which is done in Minnesota.

The fourth factor also favors jurisdiction as Minnesota "obviously has an interest in providing a forum for resident corporations," like DCP. *K-V Pharm. Co.*, 648 F.3d at 595. And the final factor is largely neutral as a trial in Arizona would be "just as inconvenient for [DCP] as a trial in [Minnesota] would be for [GunBroker.com]." *Id.*

This case is distinguishable from *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519 (8th Cir. 1996). In that case, none of the

---

[5] GunBroker.com asserts that an arbitration provision in Exhibit A of the original agreement, which provides for arbitration in Arizona, undercuts the significance of the choice-of-law provision. The amended agreement, however, "deleted [Exhibit A] in its entirety and replaced [it]" with a new exhibit that does not contain an arbitration provision. (*See* Am. Agreement at 3.)

in-person meetings occurred, and none of the contract was performed, in the forum state. *Id.* at 525. Here, in contrast, at least one meeting occurred in Minnesota and some of work performed under the agreement, around 50%, was performed in Minnesota. (Beer Aff. ¶ 6.) Moreover, the contract contemplated GunBroker.com's continued contact with Minnesota through its monthly payments to DCP and DCP's continued development and maintenance of its software services. While in *Digi-Tel* "[t]he only domestic element of the agreement related to the interpretation of the contract under Minnesota law," here GunBroker.com has had much more contact with Minnesota. *Id.*

In considering all five factors, the Court concludes that GunBroker.com has sufficient minimum contacts in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against it does not offend traditional conceptions of fair play and substantial justice. The Court therefore denies GunBroker.com's motion to dismiss for lack of personal jurisdiction and the alternative request to transfer the case to the District of Arizona.

## II. Failure to State a Claim

GunBroker.com next argues that DCP's Amended Complaint should be dismissed because DCP has failed to state a claim against GunBroker.com.

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion

7

to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.

DCP brings three claims against GunBroker.com: (1) breach of contract, (2) anticipatory breach of contract, and (3) breach of duty of good faith and fair dealing. (Am. Compl.)

"To plead a breach-of-contract claim under Minnesota law, the plaintiff must allege that (1) an agreement was formed, (2) the plaintiff performed any conditions precedent to the plaintiff's demand of performance by the defendant, and (3) the defendant breached the contract." *Mono Advert., LLC v. Vera Bradley Designs, Inc.*, 285 F. Supp. 3d 1087, 1089-90 (D. Minn. 2018). DCP alleges that it entered into a contract with GunBroker.com that provided that DCP would be the exclusive provider of payment processing services for GunBroker.com. (Am. Compl. ¶ 10; *see* First Agreement at 2.) The contract was amended in 2023 and provided that DCP would be "the exclusive provider of Payment Processing Services upon DCP providing ACH payment processing services to [GunBroker.com]." (Am. Agreement at 2.) DCP alleges that it provided ACH payment processing services. (Am. Compl. ¶ 8.) DCP therefore asserts that GunBroker.com breached the contract by selecting a third party to replace DCP in violation of the exclusivity provision. (*Id.* ¶ 11.)

Additionally, the contract provided that DCP would receive a fee for processing payment transactions and further made confidential certain information, such as costs and details of services. DCP alleges that GunBroker.com has refused to pay DCP fees owed under the contract and has violated the confidentiality provision by, among other things, sharing information about pricing structure. (*Id.* ¶¶ 12, 14.)

Contrary to GunBroker.com's assertion, DCP's allegations are more than a "threadbare recital" of the elements of breach of contract. (Doc. No. 25 at 21.) While DCP does not cite to specific provisions of the contract in its Amended Complaint, the original and amended contracts are in the record and correspond with DCP's allegations. DCP has adequately alleged that GunBroker.com has violated several provisions within the agreement, including the exclusivity provision, payment of fees, and confidentiality.

In response, GunBroker.com argues that the contract authorizes it to disclose certain confidential information. While this may be GunBroker.com's defense as the case proceeds, at this time, DCP has plausibly alleged that GunBroker.com breached the confidentiality provision by sharing information related to pricing structure to third parties. And lastly, GunBroker.com contends that the agreement "expressly authorizes the parties to use third-party service providers." (*Id.* at 23.) But this assertion is misleading. The agreement authorizes DCP to assign processing of services to third parties. Thus, DCP has plausibly alleged that GunBroker.com's use of third-party service providers to replace DCP, and without DCP's approval, violates the agreement.

Next, GunBroker.com argues that DCP has failed to state a claim for anticipatory breach. Under Minnesota law, an anticipatory repudiation is "an unconditional

9

repudiation of a contract, either by words or acts, which is communicated to the other party prior to the time fixed by the contract for his performance." *Matter of Haugen*, 278 N.W.2d 75, 79 n.6 (Minn. 1979). GunBroker.com argues that DCP merely recites the elements of anticipatory repudiation without providing specific facts in support of the claim. The Court disagrees. DCP has alleged conduct that provides sufficient evidence of GunBroker.com's intent to not perform future obligations under the agreement, namely, GunBroker.com's hiring of a third party to replace DCP and its failure to pay fees owed to DCP.

DCP's last claim is for breach of the covenant of good faith and fair dealing. "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not unjustifiably hinder the other party's performance of the contract." *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) (internal quotations and citation omitted). A party breaches the implied covenant of good faith and fair dealing when it "acts in bad faith," or "refuses to fulfill some duty or contractual obligation based on an ulterior motive." *Armas v. Fifth Third Bancorp*, 315 F. Supp. 3d 1118, 1123 (D. Minn. 2018) (internal quotations and citation omitted).

GunBroker.com again asserts that DCP has merely recited the elements of the claim. DCP alleges that GunBroker.com hired a third party to replace DCP as its service provider, in violation of their agreement for DCP to be GunBroker.com's exclusive provider of payment services. Additionally, DCP asserts that GunBroker.com has "refused to pay [DCP]" fees for processing transactions and breached the agreement's

10

confidentiality provision by sharing confidential information about pricing structures to third parties. The Court concludes that these facts plausibly support an inference of bad faith.

Because DCP has adequately pled each claim in its Amended Complaint, the Court denies GunBroker.com's motion to dismiss for failure to state a claim.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that GunBroker.com's motion to dismiss (Doc. No. [22]) is **DENIED.**

Dated: May 17, 2024                                s/Donovan W. Frank
                                                                DONOVAN W. FRANK
                                                                United States District Judge